Caitlin Duffy, Esq.
Attorney ID: 026492007
BORRELLI & ASSOCIATES, P.L.L.C.
910 Franklin Avenue, Suite 200
Garden City, New York 11530
Tel: (516) 248-5550
Fax: (516) 248-6027
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DESI TYNES,<br><br>                    Plaintiff,<br><br>         -against-<br><br>MAX GURWICZ & SON, INC., and JOSEPH GURWICZ, individually, and MAX GURWICZ, individually, and CAROL BARANOWSKI, individually,<br><br>                 Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

DESI TYNES ("Plaintiff"), by and through his attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for his Complaint against MAX GURWICZ & SON, INC. ("MGS"), and JOSEPH GURWICZ, individually ("Joseph"), and MAX GURWICZ, individually ("Max"), and CAROL BARANOWSKI, individually ("Baranowski"), (together, where appropriate, as "Defendants"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1.      This is a civil action for damages and other redress based upon violations that Defendants collectively committed of Plaintiff's rights guaranteed to him by: (i) the overtime and the anti-retaliation provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(a), 215(a)(3); (ii) the overtime and the anti-retaliation provisions of the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. § 34:11-56a4, *et seq.*; (iii) the full payment and the anti-retaliation provisions of the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. § 34:11-4.2, *et seq.*; (iv) New Jersey common law, as explained in *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58 (1980); (v) the anti-race discrimination and the anti-retaliation provisions of Section 1981 of Title 42 of the United States Code ("Section 1981"); (vi) the anti-race discrimination, the anti-retaliation, and the anti-aiding and abetting provisions of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1, *et seq.*; and (vii) any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiff, who is African American, worked for and with Defendants - - a New Jersey corporation that develops and owns residential and commercial properties, along with its owner, the owner's son, who also serves as a Property Manager and was Plaintiff's direct supervisor, and a Maintenance Coordinator who was Plaintiff's co-worker - - from March 30, 2017, until July 7, 2020, as a Live-In Maintenance Supervisor at Woodcrest Apartments, which is located in Egg Harbor Township, New Jersey.

3.      As detailed below, throughout Plaintiff's employment, Defendants MGS and Joseph willfully failed to pay Plaintiff the overtime wages lawfully due to him under the FLSA, the NJWHL, and the NJWPL.  Specifically, throughout his employment, those Defendants required Plaintiff to work - - and Plaintiff did in fact work - - more than forty hours during most

workweeks, but they paid Plaintiff at his regular hourly rate for only his first forty hours of work in a week, and thus they did not pay Plaintiff at all for any hours that he worked over forty in a week.

4.      Worse yet, as described below, Defendants subjected Plaintiff to a hostile work environment on the basis of his race, as, *inter alia*, Defendant Baranowski called Plaintiff a "nigger" and regularly insulted him on the basis of his race, and the other Defendants did nothing to stop it, in violation of Section 1981 and the NJLAD.

5.      Defendants MGS, Joseph, and Max further discriminated against Plaintiff based on his race by refusing to pay him a bonus, while paying one to their non-African American employees as an incentive for their work performed during the onset of the COVID-19 pandemic, also in violation of Section 1981 and the NJLAD.

6.      Finally, after Plaintiff complained to Defendants Max and Joseph about his unpaid overtime wages, as well as the racial discrimination to which he was being subjected, Defendants MGS, Joseph, and Max retaliated by terminating his employment, in violation of the FLSA, the NJWHL, the NJWPL, New Jersey common law, Section 1981, and the NJLAD.

## JURISDICTION AND VENUE

7.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq.* and 42 U.S.C. § 1981.  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under state law.

8.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

9.    At all relevant times herein, Plaintiff was and is a resident of the State of New Jersey, who worked for Defendants in New Jersey, and who was an "employee" within the meaning of the FLSA, the NJWHL, the NJWPL, New Jersey common law, Section 1981, and the NJLAD, and who is a "person" within the meaning of Section 1981 and the NJLAD.

10.    At all relevant times herein, Defendant MGS was and is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business located at 331 Tilton Road, Northfield, New Jersey 08225, and that is a "person" within the meaning of the FLSA, Section 1981 and the NJLAD.

11.    At all relevant times herein, Defendant Joseph was and is the owner, Treasurer, and Secretary of MGS, who was and is the person responsible for making all decisions on MGS's behalf with respect to employees' hours worked and the rates and method of payment of employees' wages, including Plaintiff's, and he is a "person" within the meaning of the FLSA and the NJLAD.  To that end, Joseph hired Plaintiff, set his schedule, determined his rates of pay, and made the ultimate decision to terminate Plaintiff's employment.  He was also responsible for maintaining Plaintiff's employment records.

12.    At all relevant times herein, Defendant Max was and is a Property Manager for MGS and was Plaintiff's direct supervisor during Plaintiff's employment, and he is a "person" within the meaning of the FLSA and the NJLAD.  Max terminated Plaintiff's employment at Joseph's direction.

13.    At all relevant times herein, Defendant Baranowski was and is a Maintenance Coordinator for MGS, she was Plaintiff's coworker, and she is a "person" within the meaning of the NJLAD.

14.     At all relevant times herein, Defendants MGS and Joseph were and are "employers" within the meaning the FLSA, the NJWHL, the NJWPL, New Jersey common law, Section 1981, and the NJLAD.

15.     Additionally, at all times relevant to the FLSA, Defendant MGS's qualifying annual business exceeded $500,000.00, and MGS was and is an enterprise engaged in interstate commerce within the meaning of the FLSA, as it employed two or more employees, purchased and used construction materials that originated out of state, and accepted payments in cash that naturally moved across state lines, as well as credit cards as a form of payment based on cardholder agreements with out-of-state companies, the combination of which subjects MGS to the FLSA's overtime requirements as an enterprise.

## BACKGROUND FACTS

16.     Defendant MGS is a New Jersey corporation that develops and owns residential and commercial properties, with its principal place of business located at 331 Tilton Road, Northfield, New Jersey 08225.

17.     Defendant Joseph is MGS's owner, Treasurer, and Secretary, who in those roles made and makes all personnel-related decisions regarding MGS's employees, including all matters relating to their hours worked, their compensation, and their rates and methods of pay, including those matters with respect to Plaintiff.

18.     Defendant Max, who is Joseph's son, is a Property Manager for MGS.

19.     Defendant Baranowski is a Maintenance Coordinator for MGS.

20.     Plaintiff worked for MGS as a live-in Maintenance Superintendent at Defendants' Woodcrest Apartments complex - - a ninety-six-unit residential apartment complex comprised of

eight two-story buildings, which is located in Egg Harbor Township, New Jersey - - from March 20, 2017, until July 7, 2020.

21.     Defendant Joseph hired Plaintiff and Defendant Max fired him at Joseph's direction.

22.     Defendant Max directly supervised Plaintiff.

23.     Plaintiff was required to interact with Defendant Baranowski on a near daily basis, and she also, at times, assisted Plaintiff with his work.  More specifically, when Plaintiff needed something in order to do his job, such as to hire an outside contractor or a part that he did not have, he would contact Baranowski, who would then hire the needed contractor or obtain the part that Plaintiff needed.

24.     As a live-in Maintenance Superintendent for Woodcrest Apartments, Plaintiff was responsible for maintaining the property by, *inter alia*, inspecting and repairing the premises of the apartment complex.  Specifically, Plaintiff repaired the building if it encountered heat, plumbing, and/or electrical issues.  He also fixed appliances as needed, walked the grounds to make sure there were no issues, and ordered parts to have on hand for repairs.

**Wage Allegations**

25.     Throughout Plaintiff's employment, Defendants MGS and Joseph scheduled Plaintiff to work, and Plaintiff did in fact work, five days per week, Monday through Friday, from 8:00 a.m. to 4:30 p.m., with a scheduled half-hour lunch break each day, for a total of forty scheduled hours per week.

26.     In addition to his scheduled hours, Defendants MGS and Joseph also required Plaintiff to be on-call twenty-four hours a day, seven-day a week, including on weekends and holidays.  Specifically, these Defendants provided Plaintiff with a work phone and required

Plaintiff to keep it on him at all times and answer all calls made to it.  They further required Plaintiff to respond to any emergencies within an hour, even if it was outside of his regularly-scheduled hours.  On the twenty-four hour on-call schedule, Plaintiff typically performed three-to-four additional hours of work per week outside of his regularly-scheduled hours. Additionally, Defendant Baranowski interrupted Plaintiff's lunch breaks on a near-daily basis to request that Plaintiff immediately perform work-related tasks.   Thus, Plaintiff, on average, worked forty-five and one-half to forty-six and one-half hours per week.

27.     During his employment, Defendants MGS and Joseph compensated Plaintiff, in cash, on a weekly basis, at the regular hourly rate of $18.00 in 2017, and then $18.23 from 2018 through the end of his employment, for only the first forty hours that Plaintiff worked in a week. They paid Plaintiff nothing for any hours that he worked beyond forty in a week, let alone at the statutorily-required rate of one and one-half times his regular hourly rate.

28.     By way of example only, during the week of November 26 to December 2, 2017, Defendants MGS and Joseph required Plaintiff to work, and Plaintiff did work, his regularly-scheduled Monday through Friday shifts, from 8:00 a.m. to 4:30 p.m.  Plaintiff did not receive his thirty-minute break on any day during this week because Defendant Baranowski interrupted him each day.  In addition, during the remainder of that week, MGS and Joseph required Plaintiff to remain on-call the entire time.  During that on-call time that week, outside of his regularly-scheduled hours, Plaintiff performed approximately three and one-half hours of work, from 4:30 p.m. to 8:00 p.m. on Thursday, November 30, 2017, repairing the shower converter in an apartment in which the hot water was not working properly.   Thus, Plaintiff worked a total of forty-six hours during this week, and he was on-call for the remainder of the week.  In exchange, MGS and Joseph paid Plaintiff at his regular hourly rate of $18.00 for only his first forty hours of

work, and did not pay Plaintiff at all for any hours that he worked over forty, or for any hours that Plaintiff was on-call engaged to wait to work, let alone at what should have been his overtime rate of $27.00 per hour for any of that time.

29.     Defendants MGS and Joseph acted in this manner to maximize their profits and minimize their labor costs and overhead.

30.     Each hour that Plaintiff worked was for Defendants MGS's and Joseph's benefit.

**Discrimination Allegations**

31.     Plaintiff is African American and dark skinned.

32.     Defendant Baranowski is white.

33.     During Plaintiff's employment, the Maintenance Supervisors for MGS's other properties whom Plaintiff met and/or worked with were all white.

34.     From April 2017 to the end of his employment in July 2020, Baranowski routinely cursed and yelled at Plaintiff without reason or connection to his job duties, while not treating any of the white Maintenance Supervisors of other properties this way.

35.     Additionally, virtually every day, Defendant Baranowski called Plaintiff on his company cell phone during his lunch to interrupt him and order him to complete random assignments, thereby denying Plaintiff his lunch breaks, even though she was not Plaintiff's supervisor and not in charge of Plaintiff's work.   Baranowski did not treat any white Maintenance Supervisors this way.

36.     Moreover, Defendant Baranowski constantly surveilled Plaintiff's work during this time.  For example, on April 17, 2017, while Plaintiff was repairing a broken refrigerator, Plaintiff called Baranowski to bring him the parts that he needed to finish the repairs.  Later that afternoon, Baranowski arrived with the parts, but stayed nearby, watching Plaintiff closely and

insulting him by asking him, in substance, "where did someone like you learn to fix a refrigerator?"   Baranowski did not question the qualifications of any white Maintenance Supervisors.

37.     On September 3, 2018, Plaintiff confronted Baranowski for her constant surveillance and harassment of him, and asked her directly if she harassed the other, Caucasian, Maintenance Supervisors the way that she harassed him.  Baranowski responded: "no, just you."

38.     On February 7, 2019, Baranowski's harassment reached a boiling point when she came into an apartment that Plaintiff was preparing for a new tenant and yelled at Plaintiff about how he should do his job.  Plaintiff was left anxious and physically shaking from the stress of this encounter.

39.     In or around July 2019, while working on a project at Woodcrest Apartments, Maintenance Assistant, Dion Samuel, who is African American, informed Plaintiff that Baranowski had referred to Plaintiff as a "dumb nigger" in a conversation with Max.  However, Max did not take any action to discipline or correct Baranowski's behavior.

40.     In or around late-May 2020, Plaintiff became aware that MGS and Joseph paid a bonus to their non-African American employees for working during the shutdowns caused by the COVID-19 Pandemic, while Plaintiff did not receive one, despite also working during the COVID shutdowns.  Upon learning this, Plaintiff met with Max to inquire if he was getting a bonus.  Max assured Plaintiff that he would look into it.  The following day, Max gave Plaintiff his "bonus" in the form of a novelty dollar bill with a picture of President Donald J. Trump on the front.  Plaintiff sat in silence from disbelief while Max laughed.

**Retaliation Allegations**

41.     In or around late-May or early-June 2020, Plaintiff met with Max to discuss his pay.  Specifically, Plaintiff complained to Max about MGS and Joseph's failure to pay him overtime wages for his hours worked over forty in a week.  In response, Max told Plaintiff that he was "too outspoken for a black" and that he was an opinionated "angry black man."  When Plaintiff mentioned that he might get a lawyer to try to get his overtime pay, Max responded that they were not worried because Plaintiff "can't afford a lawyer."  Max later confirmed to Plaintiff that he had informed his father, Joseph, of Plaintiff's complaint.

42.     Around this same time, in early-June 2020, Plaintiff complained to Max about Baranowski's constant surveillance and harassment of him due to his race.  Max responded that Plaintiff could "deal with it" or quit.  Days later, Max informed Plaintiff that he had discussed, and laughed, about Plaintiff's complaint with his father Joseph.

43.     Shortly thereafter, on June 26, 2020, Plaintiff went on vacation.  While Plaintiff was on vacation he saw an advertisement for his job on a job search website.  On July 7, 2020, Plaintiff's first day back from vacation, he asked Max about the advertisement and if they were looking to replace him.  While in Plaintiff's presence, Max called Joseph, who was not present. Max then informed Plaintiff that Joseph confirmed that they were in fact looking for Plaintiff's replacement.  Shortly thereafter, Max, still in Plaintiff's presence, called Joseph a second time. After hanging up with Joseph, Max informed Plaintiff that Plaintiff's employment was terminated.  Max then bragged to other employees, including Dion Samuel, that "I fired Desi."

44.     After terminating Plaintiff's employment, Defendants replaced Plaintiff with a Caucasian employee who did not have Plaintiff's level of experience or skill with building or appliance maintenance, and who was unable to properly repair building appliances when needed.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS MGS AND JOSEPH
### *Unpaid Overtime in Violation of the FLSA*

45.　Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

46.　29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

47.　As described above, Defendants MGS and Joseph are employers within the meaning of the FLSA, while Plaintiff was an employee within the meaning of the FLSA.

48.　As also described above, Plaintiff worked in excess of forty hours in a workweek, yet Defendants MGS and Joseph failed to compensate Plaintiff in accordance with the FLSA's overtime provisions.

49.　Defendants MGS and Joseph willfully violated the FLSA.

50.　Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times his regular rate of pay.

51.　Plaintiff is also entitled to liquidated damages and attorneys' fees for Defendants MGS and Joseph's violations of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS MGS, JOSEPH, AND MAX
### *Retaliation in Violation of the FLSA*

52.　Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

53.　29 U.S.C. § 215(a)(3) prohibits any person from discharging or in any other manner discriminating against an employee because such employee has filed any complaint relating to an employer's violation of the FLSA.

54.     As described above, Defendants MGS, Joseph, and Max are each a person within the meaning of the FLSA, while Plaintiff was an employee within the meaning of the FLSA.

55.     As also described above, after Plaintiff engaged in activity protected under the FLSA, Defendants MGS, Joseph, and Max retaliated by terminating his employment.

56.     As a direct and proximate result of Defendants MGS, Joseph, and Max's unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, economic harm, for which he is entitled to an award of monetary damages and other relief.

57.     Plaintiff is also entitled to compensatory damages, punitive damages, liquidated damages, and attorneys' fees for Defendants MGS, Joseph, and Max's violations of the FLSA's anti-retaliation provisions.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS MGS AND JOSEPH
*Unpaid Overtime in Violation of the NJWHL*

58.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

59.     N.J.S.A. § 34:11-56a *et seq*. requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

60.     As described above, Defendants MGS and Joseph are employers within the meaning of the NJWHL, while Plaintiff was an employee within the meaning of the NJWHL.

61.     As also described above, Plaintiff worked in excess of forty hours in a workweek, yet Defendants MGS and Joseph failed to compensate Plaintiff in accordance with the NJWHL's overtime provisions.

62.     Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times his regular rate of pay.

63.     Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants MGS and Joseph's violations of the NJWHL's overtime provisions.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS MGS AND JOSEPH
*Retaliation in Violation of the NJWHL*

64.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

65.     N.J.S.A. § 34:11-56a24 makes it unlawful for an employer to "take[] a retaliatory action against any employee by discharging or in any other manner discriminating against the employee because the employee has made any complaint to his employer . . . that he has not been paid wages in accordance with the provisions of [the NJWHL]."

66.     As described above, Defendants MGS and Joseph are employers within the meaning of the NJWHL, while Plaintiff was an employee within the meaning of the NJWHL.

67.     As also described above, after Plaintiff engaged in activity protected under the NJWHL, Defendants MGS and Joseph retaliated by terminating Plaintiff's employment.

68.     As a direct and proximate result of Defendants MGS and Joseph's unlawful retaliatory conduct in violation of the NJWHL, Plaintiff has suffered, and continues to suffer, economic harm, for which he is entitled to an award of monetary damages and other relief.

69.     Plaintiff is also entitled to compensatory damages, liquidated damages, and attorneys' fees for Defendants MGS and Joseph's violations of the NJWHL's anti-retaliation provisions.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS MGS AND JOSEPH
*Failure to Pay Full Wages Owed in Violation of the NJWPL*

70.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

71.     N.J.S.A. § 34:11-4.2 requires employers to pay the full amount of wages due to employees at least twice during each calendar month, on regular paydays that are designated in advance by the employer.

72.     As described above, Defendants MGS and Joseph are employers within the meaning of the NJWPL, while Plaintiff was an employee within the meaning of the NJWPL.

73.     As also described above, Defendants MGS and Joseph failed to pay Plaintiff the full amount of wages due to him each pay period.

74.     Plaintiff is entitled to payment for all wages due to him that were not paid.

75.     Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants MGS and Joseph's violations of the NJWPL's full payment provisions.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS MGS AND JOSEPH
*Retaliation in Violation of the NJWPL*

76.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

77.     N.J.S.A. § 34:11-4.10 makes it unlawful for an employer to take "a retaliatory action against an employee by discharging or in any other manner discriminating against the employee because the employee has made a complaint to that employee's employer, to the commissioner, or to that employee's authorized representative, that the employer has not paid the employee the full amount of wages agreed upon or required by, and in the manner required by, the provisions of [the NJWPL]."

78.     As described above, Defendants MGS and Joseph are employers within the meaning of the NJWPL, while Plaintiff was an employee within the meaning of NJWPL.

79.     As also described above, after Plaintiff engaged in activity protected under NJWPL, Defendants MGS and Joseph retaliated by terminating Plaintiff's employment.

80.     As a direct and proximate result of Defendants MGS and Joseph's unlawful retaliatory conduct in violation of the NJWPL, Plaintiff has suffered, and continues to suffer, economic harm, for which he is entitled to an award of monetary damages and other relief.

81.     Plaintiff is also entitled to compensatory damages, liquidated damages, and attorneys' fees for Defendants MGS and Joseph's violations of the NJWPL's anti-retaliation provisions.

## SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS MGS AND JOSEPH
### *Retaliation in Violation of New Jersey Common Law*

82.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

83.     Under New Jersey common law, as articulated in *Pierce*, an employee may bring a private cause of action when his employer terminates his employment in violation of "a clear mandate of public policy."

84.     As described above, Defendants MGS and Joseph are employers within the meaning of New Jersey common law, while Plaintiff was an employee within the meaning of New Jersey common law.

85.     As also described above, Defendants MGS and Joseph violated "a clear mandate of public policy" by terminating Plaintiff's employment in retaliation for Plaintiff's complaints about not being paid all wages due.

86.     As a direct and proximate result of Defendants MGS and Joseph's unlawful retaliatory conduct in violation of New Jersey common law, as articulated through *Pierce*, Plaintiff has suffered, and continues to suffer, economic harm, for which he is entitled to an award of monetary damages and other relief.

87.     Plaintiff is also entitled to compensatory damages and punitive damages for Defendants MGS and Joseph's violations of New Jersey common law, as articulated through *Pierce*.

**EIGHTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
*Race Discrimination in Violation of 42 U.S.C. § 1981*

88.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

89.     Section 1981 forbids any employer or agent thereof from discriminating against employees on the basis of their race.

90.     As described above, Defendants MGS and Joseph are employers, Defendants Max and Baranowski are agents of MGS and Joseph, while Plaintiff was an employee, all within the meaning of Section 1981.

91.     As also described above, Defendants discriminated against Plaintiff, on the basis of his race, in violation of Section 1981, by fostering, condoning, accepting, ratifying, and/or otherwise failing to prevent a hostile work environment that included, among other things, severe or pervasive racial discrimination against Plaintiff.

92.     As also described above, Defendants discriminated against Plaintiff, on the basis of his race, in violation of Section 1981, by denying him the same terms and conditions of employment available to other employees of a different race, and by denying him the opportunity to work in an employment setting free of unlawful discrimination.

93.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, economic harm, as well as mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and

emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

94.     Plaintiff is also entitled to punitive damages for Defendants' malicious, willful, and wanton violations of Section 1981, as well as attorneys' fees.

## NINTH CLAIM FOR RELIEF AGAINST DEFENDANTS MGS, JOSEPH, AND MAX
### *Retaliation in Violation of 42 U.S.C. § 1981*

95.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

96.     Section 1981 prohibits employers from retaliating against employees for lodging good faith opposition to racial discrimination occurring in the workplace.

97.     As described above, Defendants MGS and Joseph are employers, Defendants Max and Baranowski are agents of MGS and Joseph, while Plaintiff was an employee, all within the meaning of Section 1981.

98.     As also described above, after Plaintiff engaged in activity protected by Section 1981, Defendants MGS, Joseph, and Max retaliated by terminating his employment.

99.     As a direct and proximate result of Defendants MGS, Joseph, and Max's unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, economic harm, as well as mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

100.    Plaintiff is also entitled to punitive damages for Defendants MGS, Joseph, and Max's malicious, willful, and wanton violations of Section 1981, as well as attorneys' fees.

## TENTH CLAIM FOR RELIEF AGAINST DEFENDANT MGS
### *Race Discrimination in Violation of the NJLAD*

101.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

102.    The NJLAD prohibits employers from discriminating against employees on the basis of their race.

103.    As described above, Defendant MGS is an employer within the meaning of the NJLAD, while Plaintiff was an employee within the meaning of the NJLAD.

104.    As also described above, Defendant MGS discriminated against Plaintiff, on the basis of his race, in violation of the NJLAD, by fostering, condoning, accepting, ratifying, and/or otherwise failing to prevent a hostile work environment that included, among other things, severe or pervasive racial discrimination against Plaintiff.

105.    As also described above, Defendant MGS discriminated against Plaintiff, on the basis of his race, in violation of the NJLAD, by denying him the same terms and conditions of employment available to other employees of a different race, and by denying him the opportunity to work in an employment setting free of unlawful discrimination.

106.    As a direct and proximate result of Defendant MGS's unlawful discriminatory conduct in violation of the NJLAD, Plaintiff has suffered, and continues to suffer, economic harm, as well as mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

107.    Plaintiff is also entitled to punitive damages for Defendant MGS's malicious, willful, and wanton violations of the NJLAD, as well as attorneys' fees.

**ELEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
JOSEPH, MAX, AND BARANOWSKI**
*Aiding and Abetting Race Discrimination in Violation of the NJLAD*

108.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

109.    The NJLAD makes it unlawful for "any person . . . to aid, abet, incite, compel or coerce" any acts forbidden by the NJLAD.

110.    As described above, Defendants Joseph, Max, and Baranowski are each a "person" and Defendant MGS is an employer, while Plaintiff was an employee, all within the meaning of the NJLAD.

111.    As also described above, Defendants Joseph, Max, and Baranowski aided and abetted Defendant MGS's discrimination against Plaintiff, on the basis of his race, in violation of the NJLAD.

112.    As a direct and proximate result of Defendants Joseph, Max, and Baranowski aiding and abetting Defendant MGS's unlawful discriminatory conduct, in violation of the NJLAD, Plaintiff has suffered, and continues to suffer, economic harm, as well as mental anguish and emotional distress, including, but not limited, to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

113.    Plaintiff is also entitled to punitive damages for Defendants Joseph, Max, and Baranowski's malicious, willful, and wanton violations of the NJLAD's aiding and abetting provisions, as well as attorneys' fees.

**TWELFTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**MGS, JOSEPH, AND MAX**
*Retaliation in Violation of the NJLAD*

114.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

115.    The NJLAD makes it unlawful for "any person . . . to take reprisals against any person because that person has opposed" any acts forbidden by the NJLAD.

116.    As described above, Defendants MGS, Joseph, and Max are each a "person" within the meaning of the NJLAD, while Plaintiff was an employee within the meaning of the NJLAD.

117.    As also described above, after Plaintiff engaged in activity protected by the NJLAD, Defendants MGS, Joseph, and Max retaliated by terminating his employment.

118.    As a direct and proximate result of Defendants MGS, Joseph, and Max's unlawful retaliatory conduct in violation of the NJLAD, Plaintiff has suffered, and continues to suffer, economic harm, as well as mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

119.    Plaintiff is also entitled to punitive damages for Defendants MGS, Joseph, and Max's malicious, willful, and wanton violations of the NJLAD, as well as attorneys' fees.

**DEMAND FOR A JURY TRIAL**

120.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.      Declare that the actions, conduct, and practices of Defendants complained of herein violate the laws of the United States and the State of New Jersey;

B.      Grant preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

C.      Enter an order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

D.      Grant an award of damages in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages in connection with his claims, whether legal or equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that Plaintiff would have received but for Defendants' unlawful discriminatory and/or retaliatory conduct;

E.      Grant an award for all damages that Plaintiff has sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff would have received but for Defendants' unlawful payment practices;

F.      Grant an award of liquidated damages and any other penalties as recoverable under the FLSA, the NJWHL, the NJWPL, New Jersey common law, Section 1981, and the NJLAD;

G.      Grant an award of damages to be determined at trial to compensate Plaintiff for harm to Plaintiff's professional and personal reputations, and loss of career fulfillment in connection with his claims;

H.      Grant an award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish in connection with his claims;

I.      Grant an award of punitive damages, as provided by law, commensurate with Defendants' ability to pay;

J.      Awarding Plaintiff his reasonable attorneys' fees, as well as his costs and disbursements incurred in connection with this action, including, but not limited to, any expert witness fees and other costs;

K.      Awarding pre-judgment and post-judgment interest, as provided by law; and

L.      Granting Plaintiff such other and further relief as this Court deems just and proper.

Dated:  Garden City, New York
        May 19, 2022

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
910 Franklin Avenue, Suite 200
Garden City, New York 11530
Tel. No. (516) 248 - 5550
Fax No. (516) 248 - 6027

By:     _____
        CAITLIN DUFFY, ESQ.

22